THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR25-034-JNW |
| Plaintiff, ) | |
| v. ) | MR. BRILL'S SENTENCING MEMORANDUM |
| SCOTT DOUGLAS BRILL, ) | |
| Defendant. ) | |

I.   **INTRODUCTION AND RECOMMENDATION**

Scott Brill respectfully joins the Government and Probation Department in asking this Court to impose a sentence of 36 months of imprisonment. Mr. Brill is deeply ashamed of his behavior. He sincerely wants help to address his addiction to methamphetamine, which is a significant contributor to his conduct. Ex. 1 (Mr. Brill's Letter to the Court).

II.  **A LENGTHY PRISON TERM IS NOT NECESSARY TO ACHIEVE THE GOALS OF SENTENCING.**

The Supreme Court has long honored this Court's "discretion" in sentencing, recognizing "every convicted person as an individual and every case as a unique study in the human failings." *Koon v. United States*, 518 U.S. 81, 113 (1996). The Sentencing Guidelines, which will be further discussed below, are not mandatory but rather advisory, and this Court must impose a term of imprisonment that that is "sufficient, but

MR. BRILL'S SENTENCING MEMORANDUM
(*United States v. Brill*, CR25-034-JNW) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

not greater than necessary" to meet the goals of sentencing as outlined in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, 245 (2005).

### A. Mr. Brill's history and characteristics justify a 36-month sentence.

Mr. Brill states his early life was "fine" but that he was a "hellion with Attention Deficit and Hyperactivity Disorder." PSR ¶ 50. He joined the Air Force at age 18 and served for about two and a half years, mostly in Panama, before he received a general discharge under honorable conditions due to misconduct. PSR ¶ 79. He is eligible to receive benefits and, before his recent arrest, was getting some services from the Veterans Administration.

While in the military, Mr. Brill started drinking heavily. PSR ¶ 65. After his discharge from the military, he started abusing methamphetamine, and his addiction to this substance has been a constant struggle throughout his adult life. PSR ¶¶ 67–69.

In his letter to the Court, Mr. Brill does not minimize the offense and acknowledges that his behavior warrants prison time. Ex. 1. While he has no history of contact offenses, he recognizes the harm that child pornography has on its victims. Mr. Brill's use of methamphetamine, however, had desensitized him to the suffering of the children depicted in the material he consumed. *Id*. Accordingly, Mr. Brill recognizes he needs sex offender treatment in addition to drug treatment and hopes to put his prison time "to good use" by pursuing rehabilitative care and vocational training. *Id*.

### B. The nature and circumstances of the offense warrant a mitigated term of imprisonment.

Mr. Brill acknowledges this is a serious offense with some aggravating circumstances. This is his second conviction for child pornography, and he was on DOC supervision at the time of the offense. A 36-month sentence is a reasonable escalation in punishment given these circumstances.

MR. BRILL'S SENTENCING MEMORANDUM
(*United States v. Brill*, CR25-034-JNW) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Mr. Brill is 49 years old, and his prior child pornography offense took place when he was 46. As his methamphetamine addiction reached a crescendo, he became desensitized to pornography and eventually started consuming child pornography. The combination of his methamphetamine and porn addictions created a "hell-like situation" for him. Ex. 1. He firmly hopes to receive treatment for both addictions and achieve his goal of making his parents proud of him "for once." *Id.*

**C.    A lengthy custodial sentence is unnecessary to protect the community.**

Extensive research, and even the Sentencing Commission, find that "viewing child pornography alone did not cause offenders to commit additional sex offenses absent other risk factors" like "deviant sexual beliefs and anti-sociality." *See* U.S. Sent'g Comm'n, *Federal Sentencing of Child Pornography: Non-Production Offenses* (2021), at 39.[1] The Sentencing Commission has noted that all offenders sentenced under USSG § 2G2.2, to include those with more aggravating behaviors (i.e., distribution of CP, attempted contact with minors, etc.), are unlikely to engage in future misconduct. A multi-year study found that only 14 of 1,093 — or 1.3% — were arrested for a contact sexual offense during the study period after release.[2] The recidivism rate also decreased with age.[3]

A sentence beyond 36 months is unnecessary to deter Mr. Brill. Long prison sentences are unlikely to deter future crime, and a long term of imprisonment may have the opposite effect. This is borne out in the research:

---

[1] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf [https://perma.cc/9YTR-XBKJ].

[2] U.S. Sent'g Comm'n, *Report to the Congress: Federal Sentencing of Child Pornography: Non-Production Offenses* (2021) [2021 Report], at 65.

[3] U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012) [2012 Report], at D-7; 2004 Recidivism Report at Exhibit 9.

MR. BRILL'S SENTENCING MEMORANDUM
(*United States v. Brill*, CR25-034-JNW) - 3

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

    Imprisonment can be justified on the grounds of just deserts and incapacitation, but the criminological fact of null effect for custodial sanctions undermines any justification based on specific deterrence.

Damon M. Petrich, Travis C. Pratt, et.al., *Custodial Sanctions and Reoffending: A Meta-Analytic Review*, Crime and Justice, Vol. 20 at 353, 402 (2021).

### III. THE DEVELOPMENT OF THE CHILD PORNGRAPHY GUIDELINES DOES NOT EXEMPLIFY THE SENTENCING COMMISSION'S EXERCISE OF ITS CHARACTERISTIC INSTITUTIONAL ROLE.

    As a preliminary matter, the defense accepts the Probation Department's guideline calculations. The parties and Probation Department agree the guidelines range is far more than necessary to meet the goals of sentencing.

    The Ninth Circuit has spoken to how the child pornography guidelines are broken and need fixing. *See United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011). Without a doubt, district court judges have the "authority to vary from the [guidelines] based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Spears v. United States*, 555 U.S. 261, 264 (2009).

    Section 2G2.2 is the least followed guideline section in our system for good reason. As early as 2010, the Second Circuit Court of Appeals the irrational "logic" of § 2G2.2. The *Dorvee* Court found that most enhancements in § 2G2.2 become "so run-of-the-mill" as to be "all but inherent to the crime of conviction." *United States v. Dorvee*, 616 F.3d 174, 186 (2d. Cir. 2010). The court concluded that the methodology of "the guideline governing 2G2.2" was "fundamentally different from most," because it "can lead to unreasonable sentences that are inconsistent with what § 3553 requires." *Id*. at 182. In *United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011), the Ninth Circuit noted the same concerns, holding that § 2G2.2 is "not the result of the Commission's 'exercise of its characteristic institutional role'" and is not based on "empirical data and national experience." *Id*. at 963.

MR. BRILL'S SENTENCING MEMORANDUM
(*United States v. Brill*, CR25-034-JNW) - 4

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

In reports in 2012 and 2021, the Sentencing Commission acknowledged these problems with the child pornography guidelines. *See* U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012) [2012 Report]; U.S. Sent'g Comm'n, *Report to the Congress: Federal Sentencing of Child Pornography: Non-Production Offenses* (2021) [2021 Report]. For over a decade, the Commission has repeatedly and consistently acknowledged that § 2G2.2 "fail[s] to differentiate among offenders in terms of their culpability,"[4] and "result in guideline ranges that are overly severe. . . ."[5]

For at least the same amount of time, experts have consistently published reports advising that earlier fears about the significance of image content were grossly overstated. Researchers found that as free images became readily available online, the images found in "collections" changed. Almost all cases "included images depicting prepubescent children engaging in sexually explicit conduct."[6] A five-year study of online child porn trading revealed that "more extreme" content in the modern "typical" case, and "larger number of images" did not correlate to either increased deviance or dangerousness.[7] By 2012, the Commission was already reporting that "the current guideline measures for offender culpability (e.g., for distribution of child pornography, number of images possessed, possession of sado-masochistic images) are generally not associated with significantly higher rates of [criminal sexually dangerous behavior]."[8]

The Commission's 2021 report to Congress advised that "while research had identified some correlation between viewing child pornography and other types of sex

---

[4] 2012 report at iii, xi; *id*. at 209, 323.
[5] *Id*.
[6] *Id*. at 84.
[7] *See* Janis Wolak, David Finkelhor, and Kimberly Mitchell, *Child Pornography Possessors: Trends in Offender and Case Characteristics,* Sexual Abuse: A Journal of Research and Treatment, at 22, Volume 23(1) (Feb. 2011), available online at https://pubmed.ncbi.nlm.nih.gov/21349830.
[8] 2012 Report, at 204.

MR. BRILL'S SENTENCING MEMORANDUM
(*United States v. Brill*, CR25-034-JNW) - 5

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

offending, most social science research suggested that viewing child pornography alone did not cause offender to commit additional sex offenses absent other risk factors."[9]

After considering the best research of the last twenty years, in two reports to Congress, the Commission has provided findings that the underlying fears that non-contact offenders will recidivate or "take the next step" to molestation were grossly overblown when Congress established the current enhancement system for these offenses and are not consistent with actual group behavior. As a group, non-contact offenders have turned-out to be strikingly amenable to treatment and supervision. After fifteen years, across multiples studies, and in two extensive reports to Congress, the Commission still maintains that "appropriate 'treatment interventions . . . are associated with lower rates of recidivism—some of them very significant.'"[10]

In the context of all these findings, the ongoing absurdity of § 2G2.2 is best illustrated by the Sentencing Commission's data for other sex offenses. In 2012, the Commission noted that offenses that resulted in lower Guideline ranges than § 2G2.2 included: forcible rape of a child, forcible prostitution of a child, travel to engage in sex with a child, sexual assault of a child, and statutory rape. The Commission reported these mean sentences (for all criminal history categories and offenders) for those crimes in federal courts:[11]

> 230 months for forcible rape of pre-pubescent children;
> 173 months for raping a pubescent child;
> 155 months for forcibly prostituting children;
> 104 months for travel to engage in sex with a child 12 or older;
> 46 months for sexual assault of a child; and
> 37 months for statutory rape.

---

[9] 2021 Report, at 39.
[10] 2012 Report, at 278 & n.31 (quoting Center of Sex Offender Management, *The Comprehensive Approach to Sex Offender Management* 5 (2008)), and at 119-122.
[11] *Id*. at Table 6-6.

MR. BRILL'S SENTENCING MEMORANDUM
(*United States v. Brill*, CR25-034-JNW) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Section 2G2.2 routinely recommends that courts punish someone who looked at images of child pornography on the internet more severely than they traditionally have punished defendants who travelled across the country to meet an actual child for sex. The guideline range under § 2G2.2 is often double or triple the typical sentence a defendant would face for statutory rape of a minor. Any guideline that suggests such conclusions is absurd. Adhering to that "logic" would undermine respect for the legal system. *See* 18 U.S.C. § 3553(a)(2)(A) (sentence must promote respect for our justice system).

This Court should also recognize that there is no point differentiating Mr. Brill from other § 2G2.2 offenders on the basis that he facilitated "swapping" pictures as compared to only receiving or simply possessing them. For instance, as far back as 2012 the Commission reported that *only 41 of 1654 cases* (2.4%) nationally did not involve presentence reports detailing actions that would trigger the base offense level for distribution. In 2021, the percentage of people whose conduct did not trigger the distribution base offense level held steady at only 2.7% (37 of 1,340).[12] Nearly all of these "simple possessors" were in fact defendants like Mr. Brill and thus the behavior in this case is not atypical for a "possession" case.[13] After significant study, the Commission also found that "distribution conduct, one of the primary legal factors in the current non-production penalty scheme (in both the penal statutes and guidelines) is generally not associated with a higher rate of criminal sexually abusive behavior."[14]

Finally, there is no evidence that Mr. Brill ever committed a contact sex offense. The Sentencing Commission has found that in nearly 48% of § 2G2.2 cases the presentence reports detailed clear evidence of criminal sexually dangerous behavior such as actual molestation of children, travel to meet a child for sex, or engaging with a

---

[12] 2021 report at 57 (63 of 94).
[13] *Id*.
[14] *Id*. at 191.

MR. BRILL'S SENTENCING MEMORANDUM
(*United States v. Brill*, CR25-034-JNW) - 7

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

minor over the internet.[15] In other words, Mr. Brill's case is also better than at least half of offenders to whom he is compared, in that he has evidence of outside sexual misconduct in his case.

## IV. CONCLUSION

Ultimately, this Court is directed by statute to impose the minimum term necessary to achieve the goals of sentencing. Here, the joint recommendation for 36 months of custody is sufficient to address those goals. Mr. Brill is a 49-year-old man who intends to put his prison time to "good use" by getting treatment. Ex. 1. Upon release, he will have support through VA resources and supervision by U.S. Probation and Pretrial Services. He does not minimize his conduct and will do everything he can to prevent it from happening again. *Id*.

Finally, Mr. Brill respectfully requests a judicial recommendation for placement at FCI Englewood, a BOP facility that has residential sex offender treatment and an RDAP program.

DATED this 3rd day of September 2025.

Respectfully submitted,

s/ *Dennis Carroll*
Senior Litigator
Federal Public Defender
Attorney for Scott Brill

---

[15] 2012 Report, at 191; 2021 report at 6 (12 of 94).

MR. BRILL'S SENTENCING MEMORANDUM
(*United States v. Brill*, CR25-034-JNW) - 8

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100